UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **VALERIE NICOLE POUNCY** | **CIV. ACTION NO. 5:21-00404** |
| **VERSUS** | **JUDGE ELIZABETH E. FOOTE** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Before the court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

**Background & Procedural History**

Valerie Nicole Pouncy filed the instant applications for Title II disability insurance benefits and Title XVI supplemental security income payments on April 25 and June 12, 2014, respectively. (Tr. 15, 203-217).[1] She alleged disability as of November 1, 2013, because of vertigo and degenerative disc disease. (Tr. 228, 232). The state agency denied the claims at the initial stage of the administrative process. (Tr. 114-141). Thereafter, Pouncy requested and received an April 28, 2015 hearing before an Administrative Law Judge ("ALJ"). (Tr. 39-113). However, in a January 20, 2016 written decision, ALJ Richard LaFata determined that Pouncy was not disabled under the Social Security Act, finding at step five of the sequential evaluation

---

[1] Pouncy filed a prior application on August 18, 1999, which was denied initially and apparently not further appealed. (Tr. 228).

process that she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 12-25). Pouncy petitioned the Appeals Council to review the adverse decision. On February 10, 2017, however, the Appeals Council denied her request for review. (Tr. 1-3).

Thereafter, Pouncy implemented a multi-front approach to support her quest for disability. First, on March 10, 2017, she filed new applications for Title II disability insurance benefits and Title XVI supplemental security income payments, which the state agency denied. (Tr. 734-746, 575-615, 643-648). Second, she filed suit before this court on April 6, 2017, to appeal the Commissioner's unfavorable disposition of her 2014 applications. *See* 616-634, 1218-1236; *Pouncy v. Berryhill, Commissioner, Social Security Administration*, Civ. Action Number 17-0499 (W.D. La.).

The latter route resulted in temporary success because on September 28, 2018, adopting an August 10, 2018 Report and Recommendation, the District Court reversed and remanded the matter for further proceedings. *Id*. Upon receipt of the remand from the District Court, the Appeals Council vacated the prior administrative decision and returned the matter to an ALJ for further proceedings. (Tr. 635-640). In so doing, the Appeals Council directed the ALJ to consolidate Pouncy's still pending 2017 claims with her 2014 claims and to issue a new decision on the consolidated claims. *Id*.

On September 6, 2019, Pouncy participated in a brief hearing before an ALJ. (Tr. 560-568, 1311-1319). Thereafter, in a September 24, 2019 written decision, ALJ Sheldon Zook determined that Pouncy was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 1271-1283).

2

On December 4, 2019, Pouncy challenged the Commissioner's final decision[2] before the United States District Court for the District of Arizona.[3] *Pouncy v. Commissioner of Social Security*, Civ. Action No. 19-5734 (D. Ariz. 2019); Tr. 1294-1297. On July 22, 2020, pursuant to a joint motion to remand, the District Court reversed and remanded the matter for further proceedings with instructions to reevaluate the medical evidence, including, but not limited to, all medical-source opinion evidence concerning physical and mental impairments. (Tr. 1298-1303). The Appeals Council, in turn, remanded the case to an ALJ on August 14, 2020. (Tr. 1304-1310). In so doing, the Appeal Council noted numerous shortcomings with the prior ALJ's analysis and directed the ALJ to redress them. *Id*.

Pursuant to the remand order, a different ALJ held a third administrative hearing on December 2, 2020. (Tr. 1241-1270). However, in a December 18, 2020 written decision, ALJ Patricia Bucci again determined that Pouncy was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 1172-1188). The Appeals Council did not assume jurisdiction of the case, and, thus, the ALJ's decision became the final decision of the Commissioner. *Id*.

Apparently having moved back to Shreveport, Louisiana, Pouncy filed the instant complaint for judicial review of the Commissioner's final decision on February 18, 2021. Following submission of the administrative transcript and supporting memoranda, the matter is again before the court.

---

[2] Following a District Court remand, a subsequent decision by an ALJ will become the final decision of the Commissioner unless the Appeals Council assumes jurisdiction of the case. 20 C.F.R. § 404.984. The Appeals Council did not assume jurisdiction.

[3] At some point in 2017, Pouncy moved to Arizona. *See* Tr. 1251.

## Standard of Review

This court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). The Supreme Court has emphasized that

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, ___ U.S.___, 139 S.Ct. 1148, 1154 (2019) (internal citations omitted). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – *unless* the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical

4

or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). A disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual will be found not disabled if he or she does not have a "severe impairment," or a combination of impairments that is severe, and of the requisite duration.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1], and meets the duration requirement, will be considered disabled without the consideration of vocational factors.

Before proceeding to step four, the Commissioner assesses the individual's residual functional capacity, which is used at both step four and step five to evaluate the claim.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy. If the individual can make such an adjustment, then he or she will be found not disabled. If the individual is unable to adjust to other work, then he or she will be found disabled.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.

When a finding of "disabled" or "not disabled" may be made at any step, a decision will be rendered at that point without proceeding to the remaining steps. 20 C.F.R. '§ 404.1520, 416.920; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted).

## The ALJ's Findings

**I.**    **Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 1178). At step two, she found that the claimant suffered severe impairments of multilevel degenerative disc disease, status post cervical fusion; right-sided hearing loss; obesity; coronary artery disease, status post stenting; and diabetes mellitus. (Tr. 1178-1180).[4] She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 1180-1181).

---

[4] The ALJ further determined that the claimant's medically determinable impairments of hyperlipidemia, hypertension, depression with anxiety, attention deficit hyperactivity disorder (ADHD), and bipolar disorder were not severe. *Id*. She further found that there was no objective or clinical evidence at all to support impairments of vertigo and neuropathy. *Id*.

## II. Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[5] except that she can lift/carry up to 20 pounds occasionally and up to 10 pounds frequently, stand/walk for 4 hours in an 8-hour workday, and sit for about 6 hours per 8-hour workday with normal breaks. (Tr. 1181-1186). She should never climb ladders, ropes, scaffolds, or crawl, but can occasionally climb ramps and stairs, balance, crouch, and kneel. *Id*. Further, she can frequently stoop. *Id*. The claimant can occasionally reach overhead bilaterally, but no more than occasional exposure to non-weather-related extreme heat and cold, excessive loud noise, excessive vibration, plus pulmonary irritants, such as fumes, odors, dusts, and gases, and poorly ventilated areas. *Id*. Finally, the claimant should have no exposure to dangerous machinery or unprotected heights and should not engage in driving as part of job duties. *Id*.

## III. Steps Four and Five

With the assistance of a vocational expert ("VE") the ALJ determined at step four of the sequential evaluation process that the claimant was unable to return to past relevant work. (Tr.

---

[5] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

7

1186). Accordingly, she proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with a limited education. *Id*. Transferability of skills was not material to the decision. *Id*.

The ALJ next observed that given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. §§ 404.1569, 416.969; Rule 202.18, Table 2, Appendix 2, Subpart P, Regulations No. 4; Tr. 1186-1187. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a VE to determine whether, and to what extent the additional limitations eroded the occupational base for work. *Id*. In response, the VE identified the representative jobs of **inspector and hand packager**, *Dictionary of Occupational Titles* ("DOT") Code # 559.687-074; **account clerk**, DOT # 205.367-014; and **electronics quality control inspector**, DOT # 726.684-094. (Tr. 1186-1187, 1264-1266).[6]

## Analysis

Pouncy formally enumerated one assignment of error:[7]

1. **The ALJ's RFC determination is not supported by substantial evidence as she failed to evaluate the opinion of Dr. Staats, in accordance with the prevailing rules and regulations.**

---

[6] The VE responded that for the inspector/handpackager, account clerk, and electronic quality control inspector jobs there were 16,500, 25,000, and 16,500 positions available nationwide, respectively. (Tr. 1264-1266). This incidence of work constitutes a significant number (and range) of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[7] However, she further argued that the ALJ failed to follow the remand order to discuss Ms. Gaudet's opinion concerning her hearing impairment.

Before reaching the current ALJ's disposition of Dr. Staats' opinion(s), it will prove helpful to recite (and highlight) portions of what this court had to say about this issue the last time this case was here:

> [s]ome time after the April 2015 hearing held before the ALJ in this matter, the ALJ/state agency apparently directed plaintiff to attend a psychological consultative examination with Dr. Staats. *See* Tr. 530. The Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") authorizes an ALJ to take this course of action when "the claimant does not provide adequate evidence about his or her impairment(s) for the ALJ to determine whether the claimant is disabled or blind, and the ALJ or the HO staff is unable to obtain adequate evidence from the claimant's medical source(s) . . . " (HALLEX § I-2-5-20 (2016)).
>
> **In other words, by directing plaintiff to attend a post-hearing consultative examination, the ALJ implicitly determined that the record on file was insufficient to determine whether the claimant was disabled. Nonetheless in his decision, the ALJ proceeded to partially discount not only Dr. Staats' opinion, but also that of the consultative physical examiner, Dr. Skweres**. (Tr. 22-23).
>
> The ALJ addressed the opinions of the consultative examiners, as follows,
>
>> [w]hile Dr. Staats, a consultative psychological examiner, advised that the claimant had marked limitations in responding to usual work situations and changes in a routine work setting, this particular conclusion appears to be based on the claimant's subjective reports and is not corroborated by the other evidence of record. Dr. Staats did not include ADHD as a clinical impression and stated she showed no signs of this disorder. The undersigned accords this medical opinion partial weight as it appears to be driven by the claimant's subjective presentation/complaints, which are not entirely consistent with the longitudinal evidence of record. Additionally, the undersigned notes that Dr. Staats evaluated the claimant on only one occasion and did not have the benefit of a longitudinal treating relationship with the claimant. Dr. Staats' opinion is an overestimate of the severity of the individual's restrictions and limitations in this area of functioning and is based primarily on a snapshot of the individual's functioning. Dr. Staats' opinion regarding the capability to understand, remember, and carry out simple instructions, as well as the ability to make judgments on simple work-related decisions is entitled to substantial weight as it is consistent with the longitudinal evidence of record as well as the

> findings noted in the consultative examination.
>
> The undersigned has also considered the report of Dr. Skweres, a consultative physical examiner, that the claimant endorsed depression and anxiety which may limit her ability to interact with others. As stated above, Dr. Skweres noted normal mental status exam and specifically stated that the claimant did not appear depressed or anxious. Other examinations in the record document normal mood and affect. Therefore, the undersigned gives this opinion partial weight as it appears to rely primarily on the claimant's subjective complaints and is not consistent with the claimant's mental health treatment records.
>
> Regarding the medical opinions of the DDS medical consultants, the undersigned accords them significant weight as their opinions are generally consistent with the other evidence of record.
> (Tr. 22-23) (internal citations omitted).

**In other words, the ALJ endeavored to discount a portion of Dr. Staats' opinion on the purported grounds that it was based on the claimant's subjective complaints, it was not supported by the longitudinal record, and because Dr. Staats did not diagnose ADHD.**

However, the court does not discern where Dr. Staats' findings regarding plaintiff's ability to respond appropriately to usual work changes was premised upon a phantom ADHD diagnosis. Furthermore, while the ALJ's two remaining reasons for partially rejecting the ALJ's findings are potentially valid, the ALJ did not identify any substantial evidence in the "longitudinal" record that would support a finding that plaintiff's ability to respond appropriately to usual work situations, e.g., her ability to handle stress, was no more than mildly impaired. In fact, the ALJ acknowledged in his decision that none of the claimant's treating physicians had opined on the functional limitations of her impairments. (Tr. 22).

*     *     *

**Insofar as the ALJ purported to credit the opinion of the non-examining agency psychologist, Kelly Ray, over that of the consultative psychologist, he was not at liberty to do so.** A non-examining physician/psychologist's opinion does not provide good cause for an ALJ to discount the findings of an examining physician. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (addressing ALJ's reliance upon non-examining physician's opinion to discount findings of treating physician).[8] Moreover, there is no indication that plaintiff's mental

---

[8] The Fifth Circuit cited *Lamb* for the proposition that the reports of non-examining physicians do not provide substantial evidence when the non-examining physician's medical conclusions

10

> health treatment records were in the file at the time that Dr. Ray reviewed the matter.  *See e.g.*, Tr. 469 (records transmitted on May 19, 2015).
>
> In short, the court finds that the ALJ did not provide good cause for partially rejecting Dr. Staats' findings.   The ALJ cannot simply "pick and choose" those portions of the psychologist's findings that support his decision and discard the remainder.  *Loza, supra*.   Moreover, even if the ALJ *had* provided good cause for rejecting part of Dr. Staats' findings, the record otherwise does not support his implicit conclusion that plaintiff's mental impairments did not materially limit her ability to respond appropriately to usual work situations.
>
> *     *     *
> **Upon remand, the parties may contact plaintiff's treating physicians and ask them to complete medical source statements.   The Commissioner also may send plaintiff for a new consultative examination(s).**

(Tr. 629-633) (emphasis added).

Following remand, there is no indication that the Commissioner sent Pouncy for another mental consultative examination.   However, while Pouncy's original claims were pending before this court, the state agency, for purposes of her 2017 disability applications, sent her for another consultative mental examination on August 21, 2017, again with Dr. Staats.

In his ensuing report, Dr. Staats documented that he conducted a clinical interview with a mental status examination.   (Tr. 1042-1046).   Pouncy reported chronic anxiety and worry, with one breakthrough panic attack per day.  *Id*.   She avoided people and crowds.  *Id*.   She also complained of bipolar disorder with breakthrough sad and angry mood swings, an attention deficit hyperactivity disorder ("ADHD"), and partial post traumatic stress disorder ("PTSD") in the form of fear of abandonment or being stranded in nightmares.  *Id*.   She was alert and

---

"contradict or are unsupported by findings made by an examining physician."  *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990) (citing, *Lamb, supra*; and *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)).

oriented to person, place, time, and situation.  *Id*.  Her thinking was intact, logical, and coherent.  *Id*.  There were no delusions, hallucinations, or other signs of psychosis.  *Id*.  Her judgment was good, abstraction was fair, but insight was marginal as evidenced by her histrionic overdramatization.  *Id*.  Memory was good.  *Id*.  Attention and concentration were normal.  *Id*.  However, her overall level of adaptation appeared impaired.  *Id*.  Timeliness in task completion was normal.  *Id*.  Nonetheless, Pouncy reported poor stress tolerance and poor ability to adapt to change.  *Id*.  She also stated that she had a poor response to being told what to do.  *Id*.

Dr. Staats diagnosed moderate bipolar I disorder, depressed; unspecified anxiety disorder with partial PTSD symptoms; and severe somatic symptom disorder.  *Id*.  He opined that Pouncy should have no difficulty remembering, understanding, and carrying out simple or complex tasks.  *Id*.  She also showed normal attention skills, with ability to maintain concentration throughout the session.  *Id*.  Social interaction skills were marginal, however.  *Id*.  Staats opined that there was an "intermediate likelihood" that she would show problematic behaviors in a work setting in the form of mood swings, angry outbursts, panic attacks, anxiety, anger, etc.  *Id*.  She also could no more than marginally tolerate the stress and pressure associated with the typical eight-hour workday.  *Id*.

On September 8, 2017, non-examining agency psychologist, Lawrence Guidry, Ph.D., completed a psychiatric review technique.  (Tr. 586-588).  He evaluated the claim for depressive, bipolar, and related disorders plus anxiety and indicated that Pouncy had moderate limitations in her ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  *Id*.

Guidry also completed a mental residual functional capacity assessment form on which he documented that Pouncy was moderately limited in her ability maintain attention and concentration for extended periods, and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 592-594). She also was moderately limited in her ability take instructions from supervisors and in her ability to get along with coworkers without distracting them or exhibiting behavioral extremes. *Id*. Finally, she was moderately limited in her ability to respond appropriately to changes in the work setting because of her physical problems. *Id*.

The Commissioner's final decision in this matter is reflected in ALJ Bucci's December 18, 2020 written decision. (Tr. 1172-1188). ALJ Bucci, however, assigned no limitation of functioning stemming from Pouncy's mental impairment(s), indeed finding that Pouncy had no severe mental impairment at all. *Id*. In so doing, the ALJ highlighted certain activities and self-reports by Pouncy to indicate that she had no more than mild mental impairment. *Id*. The ALJ further noted that formal mental health care was quite minimal and that the medical treatment records did not document any significant mental limitation of functioning. *Id*.

The ALJ acknowledged Dr. Staats' examination findings. *Id*. However, she discounted their significance on the grounds that Staats purportedly relied on the claimant's allegations, rather than the medical evidence and clinical findings. (Tr. 1179). She also faulted Staats for using vague and ill-defined limitations such as "problematic behaviors," "unlikely," "questionable," and "marginally able." *Id*. She further noted that Staats was not privy to unspecified "more recent medical records." *Id*. Finally, she explained that Staats' opinions were not consistent with the medical evidence overall or his own observations and findings. *Id*.

13

Instead, the ALJ emphasized how Pouncy was able to manage her finances and medication and babysit her young grandchildren. *Id*.[9]

In the end, the ALJ assigned "minimal weight" to Dr. Staats' opinions. *Id*. In lieu of same, she opted to assign "great weight" to the 2014 opinion of the non-examining agency psychologist, Kelly Ray, Ph.D. *Id*. If this sounds familiar, that is because it is.

Needless to say, Pouncy challenges the sufficiency of the ALJ's assessment of the effects of her mental impairments. Before proceeding further, and, as the Commissioner acknowledged in her brief, the claims in this case precede March 27, 2017, and, therefore, remain subject to the pre-amendment regulations for evaluating medical opinions. *See* Comm'r. Brief, pg. 5 n.2 [doc. # 18]. This temporal circumstance has practical ramifications for the sufficiency of the ALJ's decision. First, it means that the ALJ's decision to credit comparatively benign mental status examinations by physicians who do not specialize in mental healthcare transgresses, without explanation, the maxim that the opinions of specialists are generally accorded greater weight than those of non-specialists. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). Second, it still means that "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added).[10]

---

[9] The ALJ also discounted the significance of any global assessment of functioning ("GAF") scores on the basis that they are subjective and no longer favored in the mental health field or the disability realm. (Tr. 1180).

[10] Also, a non-examining physician's opinion does not provide good cause for an ALJ to discount the findings of an examining physician. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (addressing ALJ's reliance upon non-examining physician's opinion to discount

The last time this case was here, the court endeavored to emphasize (apparently in vain) that the ALJ was not at liberty to credit the contrary findings of the non-examining agency psychologist, Dr. Ray, over those of the examining psychologist, Dr. Staats. *See* discussion, *supra*. Nonetheless, the current ALJ inexplicably perpetuated the error. In addition, the ALJ completely ignored the findings of non-examining agency psychologist, Lawrence Guidry, Ph.D., who found that Pouncy's mental impairments caused moderate limitations in functioning.

In any event, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted). The ALJ's asserted bases for discounting Dr. Staats' opinions do not withstand scrutiny. For example, she faulted Staats for crediting Pouncy's subjective complaints but review of Staats' reports reveals that he specifically noted discrepancies between Pouncy's history and her observed behavior or performance. In fact, after his second examination, Staats appears to have reconsidered his prior finding that Pouncy had marked limitation in her ability understand, remember, and carry out complex instructions. Moreover, rather than simply endorse extreme limitation of functioning in all areas, Staats indicated no more than mild limitations in most areas. Insofar as Staats was not privy to additional medical records, the ALJ did not detail what those records were or how they might have undermined Staats' opinions.

Further, the ALJ's criticism of Staats for using vague and ill-defined terms is not well-taken, considering that in 2015, Staats completed an SSA-supplied medical source statement that employed SSA terms. (Tr. 527-529). Also, to the extent that the ALJ remained confused by Staats' unorthodox terminology, she could have recontacted Staats to clarify any ambiguity.

---

findings of treating physician).

Over the years, Dr. Staats has exhibited his willingness to provide a translation key for his terms. *See, e.g., Thompson v. Astrue*, Civ. Action No. 08-1511 (W.D. La.).

The ALJ also noted activities of daily living by Pouncy that she believed were inconsistent with Dr. Staats' findings and which supported her decision that Pouncy had no severe mental impairment. However, the court fails to see how such mundane tasks, such as filling out disability questionnaires, being cooperative during medical visits, preparing occasional meals, and babysitting grandchildren[11] translate into the ability to handle the stresses, challenges, and aggravations of the workplace on a day in, day out basis. To be sure, such activities might tend to provide support for the ALJ's decision to favor a more benign medical source statement issued by a treating or consultative mental health provider in lieu of Dr. Staats' findings, but, such a competing statement is absent here.

In short, for essentially the same reasons as in 2018, the court finds that the ALJ did not provide good cause to reject Dr. Staats' findings. Furthermore, as last time, even if the ALJ *had* provided good cause for rejecting his findings, the record otherwise does not support the ALJ's determination that Pouncy's mental impairments were non-severe.[12]

In the end, it is apparent that the ALJ autonomously assessed the severity and effects of Pouncy's mental impairments, without the benefit of a viable medical opinion. In *Ripley v.*

---

[11] At her latest hearing, Pouncy clarified that her 16-year-old son was always around to help with the grandkids, if needed. (Tr. 1249-1250). Moreover, she simply had them watch television or play on their tablets. *Id.*

[12] Although not raised by Pouncy, the ALJ's RFC of Pouncy's physical impairments also appears to suffer from many of the same errors that plague her resolution of the effects of Pouncy's mental impairments.

*Chater*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four-year history of back troubles. *Id*. However, without reports from qualified medical experts, the Fifth Circuit was unable to conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court could not determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.

The instant case is materially indistinguishable from *Ripley, supra*. The record is devoid of a medical source statement that parallels the ALJ's RFC. Moreover, Pouncy's own testimony was not consistent with the ALJ's step two determination, which ultimately resulted in an RFC with no limitation of functioning from her mental impairment(s). *See* Tr. 251 (she does not want to be around anyone and does not handle stress well); Tr. 874 (falls into depression or anxiety with stress; does not like change). Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical

17

opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

Because the foundation for the ALJ's step five determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that Pouncy is not disabled, likewise is not supported by substantial evidence.

The courts enjoy the authority to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).

Quite understandably, Pouncy urges the court to reverse and remand the matter solely for the calculation of benefits. The court certainly shares Pouncy's frustration with the Commissioner's handling of this case following this court's last remand. The Commissioner ignored this court's suggestion to obtain medical source statements from Pouncy's treating physicians and/or to obtain a new consultative examination(s), which, on its own, is an omission that compels reversal. *See Sullivan v. Hudson*, 490 U.S. 877, 886; 109 S.Ct. 2248, 2254–55 (1989) ("[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.").

Having said that, the court is not persuaded that the instant record conclusively demonstrates that the claimant is entitled to benefits. Moreover, giving the Commissioner the benefit of the doubt, it is conceivable that her reluctance to further develop the pertinent medical record may be attributable to Pouncy's relocation to Arizona and her subsequent return to Louisiana.

Consequently, upon remand, the parties may contact Pouncy's treating and/or consultative physicians/psychologists and ask them to complete medical source statements. The Commissioner also may send Pouncy for a new consultative examination(s) and have that physician/psychologist complete a medical source statement. Furthermore, in the event that the Commissioner again elects to disregard this court's instructions, the parties shall ensure that they pose a hypothetical(s) to the vocational expert that incorporates the limitations of functioning recognized by Dr. Stats and the other consultative physician(s).

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of

filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY's FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 26th day of July, 2022.

*/s/ Kayla Dye McClusky*
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE